### G. S. EMORY v. GAS STEAMER "CLINTON" ET ALS.

(Filed 20 February, 1924.)

**Admiralty—Negligence—Fires—Evidence—Questions for Jury—Vessels—Federal Statutes.**

> Under the provisions of section 4282, U. S. Revised Statutes, exempting the owner of a vessel from liability for loss of or damage to goods being transported, caused by fire occurring on board the vessel, unless so caused by the design or neglect of the owner, evidence is sufficient to take the case to the jury which tends to show that the motor power of the vessel was an imperfect gas engine, and the navigation of the boat in a difficult route was left to an incompetent and illiterate boy, who was alone on the boat and without aid in preventing the spread of the fire which destroyed the plaintiff's merchandise thereon.

THIS is an appeal from a justice of the peace for recovery of $165.76, the alleged value of a shipment of merchandise on the gas-boat "Clinton" in transit from Washington, N. C., to Juniper Bay, in Hyde County. The plaintiff contended that the defendants were the owners of the gas-boat and were liable for the value of the goods which were destroyed when the boat was burned, and alleges that the burning of the boat was due to negligence on the part of the owners.

The defendants Hudson and Credle admitted in their answer that they were the owners of the gas-boat, but denied any negligence on their part, alleging that the goods were transported on a vessel registered in the United States Customs House; that the fire was not caused by any design or neglect on their part, and that they were protected from liability as owners of the vessel under the Federal statute. At the close of the plaintiff's evidence, motion of nonsuit was allowed, and plaintiff appealed.

*S. S. Mann for plaintiff.*
*Walter L. Spencer and Small, MacLean & Rodman for defendants.*

CLARK, C. J. This case was before the Court in *Emory v. Credle,* 185 N. C., 3. In that case the Court held that, under section 4282,

U. S. Revised Statutes, which exempts the owner of any vessel from liability for loss or damage to any merchandise in being transported on his vessel by means of any fire occurring on board the vessel "unless such fire is caused by design or neglect of such owner," it was error in the charge to permit the jury to consider the negligence of the crew as an alleged cause of the negligence, but it also said that in this case there was evidence "permitting the inference that the loss and destruction of the boat and goods were due to negligence on the part of the owners themselves."

On this second trial below it seems to us that the evidence admitted was restricted by the court to the negligence of the owner. The inquiry was confined to what' occurred on the vessel at the time of the fire, and thereby necessarily narrowed the plaintiff's proofs to defects in the machinery or in the selection of incompetent master and employees by the owner.

It was in evidence that the captain and master of the boat was not on it at the time of the fire; that the vessel had a back-firing engine that had given trouble on the trip down from Washington when the captain was on board; that the witness Gorham, then only seventeen years of age, not only on this occasion when plaintiff's goods and the vessel were destroyed by fire, but on other occasions, had carried this vessel by himself, with valuable cargoes, through tortuous channels, beset, as appears from government charts, with shoals and narrows, across the open water of Pamlico Sound, he being ignorant of the names, depths or dimensions of the various bays, creeks, channels and shoals through which he was attempting alone to navigate a vessel of considerable dimensions and capacity; that he was without license, though acting as captain and mate, engineer and machinist—alone, coping with the difficulties of managing a refractory engine and guiding a vessel loaded with goods of plaintiff and others through intricate passages, without even a helmsman to assist him in running his vessel with the wind, to prevent or allay the spread of the flames, and finally having to abandon his charge and seek his own safety by committing himself to the waters, fortunately shallow enough to enable him to escape to a remote shore with his life. He could neither read figures nor tell anything about the depth or changes in channels from the charts; yet, as plaintiff's counsel quotes:

> "He was the cook and the captain bold,
>     And the mate of the 'Nancy' brig;
> He was the bos'un tight and a midshipmite
>     And the crew of the captain's gig."

That the boat was thus without any adequate supervision and left to the sole control of an uneducated and incompetent boy, was evidence

of negligence of the owner in not exercising proper supervision, from which the jury could have inferred the negligence of the owner.

A case exactly in point is *Matter of Wright* (1878), 10 Ben. (U. S.), 14, in which it was held as follows: "It is the duty of the owner to provide the vessel with a competent master and a competent crew, and to see that the ship when she sails is in all respects seaworthy. He is bound to exercise the utmost care in these particulars—such care as the most prudent and careful men exercise in their own matters under similar circumstances. And if by reason of any fault or neglect in these particulars a loss occurs, it is with his privity within the meaning of the act. If some secret defects exist which could not be discovered by the exercise of such due care, the owner is exonerated by the exercise of all proper care in making his ship seaworthy." 6 Fed. Stat. Ann. (2 ed.), p. 346.

We think, therefore, the case should have been submitted to the jury upon the evidence. The judgment of nonsuit is

Reversed.